UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| KATIE LYNN DOMBLEWSKI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:19-CV-686-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Katie Lynne Domblewski ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 18).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 11, 15. Plaintiff also filed a reply. *See* ECF No. 17. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 15) is **GRANTED.**

## BACKGROUND

On August 13, 2015, Plaintiff protectively filed an application for SSI, alleging disability beginning August 13, 2014 (the disability onset date), due to: neck and back impairments, neuropathy, and anxiety. Transcript ("Tr.") 142, 234-40, 241-42, 268. Plaintiff's claim was denied initially on December 14, 2015 (Tr. 142, 143-52), after which she requested a hearing (Tr. 170-72). On January 31, 2018, Administrative Law Judge Benjamin Chaykin (the "ALJ") presided

over a video hearing from Alexandria, Virginia. Tr. 15, 91-141. Plaintiff appeared and testified

from Buffalo, New York, and was represented by Kelly Laga-Sciandra, an attorney. Tr. 15. Ray

O. Berger, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on July 3, 2018, finding that Plaintiff was not

disabled. Tr. 15-24. On March 26, 2019, the Appeals Council denied Plaintiff's request for further

review. Tr. 1-6. The ALJ's July 3, 2018 decision thus became the "final decision" of the

Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the

SSA's conclusions were supported by substantial evidence in the record and were based on a

correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §

405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive"

if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations

omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."

*Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is

disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of

2

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his July 3, 2018 decision:

1. The claimant has not engaged in substantial gainful activity since August 13, 2015, the application date (20 CFR 416.971 *et seq.*);

2. The claimant has the following severe impairments: cervical spine degenerative disc disease, and lumbar spine degenerative disc disease (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a)[1] except the claimant is subject to the following limitations: (1) no climbing of ropes, scaffolds, or ladders, (2) occasional climbing of ramps or stairs, (3) occasional stooping, crouching, balancing, kneeling, or crawling; (4) no exposure to dangerous hazards such as unprotected heights or dangerous machinery, and (5) occasional overhead reaching, frequent reaching in all other directions, bilaterally;

5. The claimant is unable to perform any past relevant work (20 CFR 416.965);

6. The claimant was born on May 7, 1988 and was 27 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963);

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a));

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 13, 2015, the date the application was filed (20 CFR 416.920(g)).

Tr. 15-24.

---

[1] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits filed on August 13, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 24.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ erred in finding her medically determinable impairments of anxiety disorder and affective disorder were non-severe. *See* ECF No. 11-1 at 1, 20-24. Plaintiff argues that these impairments met the *de minimis* severity standard set forth in the regulations. *See id*. at 21-22. Second, Plaintiff argues that the ALJ erred by failing to include Plaintiff's mental limitations in the RFC analysis and the RFC finding, resulting in a determination that is not supported by substantial evidence. *See id*. at 1, 24-28.

The Commissioner responds that substantial evidence supports the ALJ's step two determination that Plaintiff's alleged mental impairments of affective disorder and anxiety disorder were not severe. *See* ECF No. 15-1 at 6-12. With respect to Plaintiff's second point of error, the Commissioner argues that the ALJ considered the alleged effects of Plaintiff's mental impairments throughout the sequential evaluation process, and in assessing the RFC, the ALJ considered Plaintiff's subjective complaints of panic attacks and anxiety, as well as the medical opinions regarding Plaintiff's mental functioning, and the results of the consultative examination. *See id*. at 12-15.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ explained his determination that Plaintiff's mental impairments were not severe, thoroughly discussed the evidence regarding Plaintiff's mental impairments, and the ALJ's determination is supported by substantial evidence. Tr. 17-19. Furthermore, the record reflects that the ALJ considered Plaintiff's mental limitations throughout the sequential evaluation, and the medical evidence demonstrated that Plaintiff was able to engage in unskilled work, such as those identified at step five. Tr. 23.

The only medical opinions of record regarding Plaintiff's mental functioning supported the ALJ's determination that Plaintiff's mental impairments were not severe. On November 25, 2015, Plaintiff attended a consultative psychological examination with Gina Zali, Psy.D. ("Dr. Zali"). Tr. 717-21. Dr. Zali opined that Plaintiff evidenced no limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, and perform complex tasks independently. Tr. 720. She had moderate limitations with making appropriate decisions, mild limitation in relating adequately with others, and mild limitations in appropriately dealing with stress. *Id*. Dr. Zali further opined that, due to the situational stressors Plaintiff was facing at that time, including going through a divorce with her abusive husband and her substance use, she had moderate limitations in making appropriate decisions, mild limitations in relating adequately with others, and mild limitations in appropriately dealing with stress. Tr. 720. However, Dr. Zali stated that these limitations were unlikely to interfere with Plaintiff's functioning on a daily basis. Tr. 720.

On December 9, 2015, state psychological consultant D. Bruno, Psy.D. ("Dr. Bruno"), considered the evidence regarding Plaintiff's mental functioning, and opined that Plaintiff's mental impairments were not severe. Tr. 149. Dr. Bruno opined that Plaintiff has a nonsevere anxiety

disorder, with mild restriction in activities of daily living, mild difficulties in maintaining social functioning, and no difficulties in maintaining concentration, persistence or pace. *Id.*

The ALJ afforded both Dr. Zali's and Dr. Bruno's opinion moderate weight. Tr. 21-22. The ALJ noted that Dr. Zali's opinion was based on her own examination of Plaintiff, and it was consistent with the evidence overall, including Dr. Bruno's opinion, that Plaintiff had no more than mild mental functioning limitations. *Id.* The ALJ afforded Dr. Bruno's opinion moderate weight, based on his expertise in the area of mental functioning, his experience with the Social Security program, and the consistency of the opinion with the record as a whole. Tr. 22. Thus, the ALJ appropriately assessed that Plaintiff's limitations would not interfere with her functioning on a daily basis. Tr. 22, 149, 720.

As noted above, Plaintiff contends that the ALJ erred in his step two determination that Plaintiff's alleged mental impairments of affective disorder and anxiety disorder were not severe. *See* ECF No. 15-1 at 6-12. "An impairment is 'severe' if it 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Casselbury v. Colvin*, 90 F. Supp. 3d 81, 92–93 (W.D.N.Y. 2015) (quoting *Eralte v. Colvin*, No. 14 Civ. 1745(JCF), 2014 WL 7330441, at *10 (S.D.N.Y. Dec. 23, 2014): 20 C.F.R. § 404.1520(c)). "When the parties disagree over the effect of the ALJ's failure to include a condition at step two, resolution of this issue comes down to a question of whether there was substantial evidence to support the ALJ's conclusion that [the omitted condition] should not be included as a severe impairment." *Id.* (quotations omitted) (alteration in original). "[T]he severity prong is intended as a *de minimis* standard to screen out only those claimants with 'slight' limitations that 'do not significantly limit any basic work activity'" *Vicari v. Astrue*, No. 1:05–cv–4967–ENV–VVP, 2009 WL 331242, at *3 (E.D.N.Y. Feb. 10, 2009) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)).

Notably, "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (internal citations omitted). Consistent with this reasoning, "if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work[,]' " the ALJ should not find a severe condition. *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting SSR 85-28, 1985 WL 56856, at *3).

When a claimant allegedly suffers mental impairments, the ALJ is required to follow a "special technique" at each level of the administrative review process to determine whether the claimant has any severe mental impairments and whether the impairments meet or equal the Listings. 20 C.F.R. § 404.1520a. Specifically, the ALJ must assess the claimant's degree of functional limitation resulting from a mental impairment in four broad functional areas identified in Paragraph B of the adult mental disorders listings. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

As the court explained in *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282 (W.D.N.Y. 2016), this special technique helps ALJs determine whether claimants have medically-determinable mental impairments and whether any such impairments are severe at step two. *Howard*, at 296–97. ALJ's written decision must reflect application of the technique, including a specific finding as to the degree of limitation in each of the four functional areas—activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* (citing *Showers v. Colvin*, No. 3:13-cv-1147 (GLS/ESH), 2015 WL 1383819, at *4 (N.D.N.Y. Mar. 25, 2015); 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Here, the ALJ explicitly considered the effects of Plaintiff's anxiety and affective disorder using the "Paragraph

B" criteria in section 12.00C of the Listings, Mental Disorders, and properly determined that Plaintiff had no more than mild limitations. Tr. 17-18.

First, with respect to understanding, remembering, and applying information, the ALJ found that Plaintiff had a mild limitation. Tr. 17-18. The ALJ acknowledged Plaintiff's testimony regarding her history of anxiety symptoms. Tr. 18, 112-13, 115. However, the ALJ also noted that Plaintiff told psychiatric consultative examiner Dr. Zali she had left her job for physical reasons, and her mental status examination was generally normal, with intact memory, clear sensorium, and average intellectual functioning. Tr. 18, 717, 719-20. The ALJ also considered Plaintiff's testimony that she was not taking any medications and had started mental health treatment only a few weeks before the hearing, though she had spoken informally to a friend who was a counselor. Tr. 18, 121, 124. He also acknowledged Plaintiff's testimony that she had not sought mental health treatment sooner for financial reasons. Tr. 18, 124. This evidence supported the ALJ's determination that Plaintiff had only a mild limitation in this area.

Next, the ALJ determined that Plaintiff had only a mild limitation in interacting with others. Tr. 18. He acknowledged her long-term anxiety due to past incidents of violence, but he also considered that Plaintiff lived with friends, reported getting help from neighbors and family, reported regular contact with family and friends, and took public transportation, all of which indicated that she was able to interact with others with no more than mild limitations. Tr. 18, 111, 282 720.

Additionally, the ALJ determined that Plaintiff had only a mild limitation in concentrating, persisting, and maintaining pace, noting that, despite her testimony that she had panic attacks, Plaintiff's mental status examination results at the consultative examination indicated that her attention and concentration were intact, supporting a mild limitation in this area. Tr. 18, 719.

Finally, the ALJ appropriately determined that Plaintiff had only a mild limitation in adapting or managing herself. Tr. 18. The ALJ noted that any limitations in her functioning appeared to be related to her physical impairments, or to factors such as housing and finances, not mental limitations. Tr. 18; *see also* Tr. 117 (stopped working in 2014 due to injuries from automobile accident); Tr. 280 (reporting limitations in activities of daily living due to pain); Tr. 281 (reporting that she did not drive because she could not afford a vehicle). Moreover, Plaintiff reported that she cared for her infant child and another young daughter, made meals and did laundry for her husband, and shopped. Tr. 279, 281.

Upon review, the Court finds that the ALJ's reliance on the opinions of Dr. Zali and Dr. Bruno is supported by substantial evidence. As noted above, the substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). These opinions more than satisfy the low bar for substantial evidence. *See Biestek*, 139 S. Ct. at 1134; *see also Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he opinions of nonexamining sources [can] override treating sources' opinions provided they are supported by substantial evidence in the record."); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (consultative examiner opinion can constitute substantial evidence where supported by evidence in the record).

The evidence that Plaintiff cites in support of her argument that her mental impairments should have been found severe does not render the ALJ's finding unreasonable. Plaintiff notes that the record includes diagnoses or assessments of adjustment disorder, anxiety, and depression. *See* ECF No. 11-1 at 22 (citing Tr. 615, 714, 720). First, as noted above, the fact that Plaintiff had a mental impairment does not mean that it was severe, as diagnoses or assessments give no information about severity. *See Taylor v. Astrue*, 32 F. Supp. 3d at 265. Moreover, two of the pages Plaintiff cites are from the consultative examinations and were based on Plaintiff's self-reported medical history. Tr. 714, 720. Notably, Dr. Zali opined that, despite these diagnoses, Plaintiff's psychiatric problems were not significant enough to interfere with her ability to function on a daily basis. Tr. 720.

Plaintiff also cites a diagnosis of adjustment disorder from a November 2014 clinical assessment by internist John Bauers, M.D. ("Dr. Bauers"), Plaintiff's primary care physician. Tr. 615. However, this single clinical assessment by a primary care physician does not demonstrate that Plaintiff's impairment was severe. In addition, this assessment occurred prior to Plaintiff's SSI application date, and as such, was prior to the relevant period in this case. *Id*. Furthermore, Dr. Bauers attributed Plaintiff's increased anxiety to caring for a newborn and a five-year-old, not to longer-term mental health issues. Tr. 615. Furthermore, as the ALJ noted, Dr. Bauers opined in a medical source statement form dated March 8, 2015 that Plaintiff had no evidence of mental limitations. Tr. 21, 655.

Plaintiff also cites the fact that she took psychotropic medications, but this alone is not a basis to find severity; severity instead looks to the claimant's actual functioning, which Dr. Zali and Dr. Bruno both found was not significantly affected here. Tr. 149, 720. Plaintiff also cites treatments notes in which she was characterized as "anxious, irritable, or distressed" during examinations. *See* ECF No. 11-1 at 22 (citing Tr. 332, 483, 495, 586, 587, 628, 645, 668, 694).

However, at many of these same encounters, Plaintiff was also described as cooperative, alert, and oriented, and her memory was intact. Tr. 586, 628, 645, 668, 694. Thus, contrary to Plaintiff's argument, these records do not demonstrate functional deficits that would render the ALJ's assessment of Plaintiff's mental impairments unreasonable.

Plaintiff also argues that Dr. Zali's opinion that Plaintiff had poor judgment and moderate limitations with making appropriate decisions indicated that her mental impairments were severe. *See* ECF No. 11-1 at 22 (citing Tr. 719-20). However, Plaintiff's interpretation ignores Dr. Zali's overall conclusion that Plaintiff's impairments would not significantly affect her day-to-day functioning. Tr. 720.

Finally, Plaintiff cites her own testimony that she had resigned from her job due to pain and anxiety, and that she had numerous panic attacks. *See* ECF No. 11-1.at 22 (citing Tr. 114- 15, 127. However, Plaintiff cites no clinical evidence to support her claims of panic attacks. Although the record contains two references in December 2014 (prior to the relevant period) to Plaintiff requesting increased medication for "anxiety/panic," there was no specific description of panic attacks to her medical providers. *See* Tr. 627, 630. Additionally, Plaintiff told Dr. Zali she left her last job due to an inability to perform the physical requirements, not due to any mental impairments. Tr. 717. The ALJ acknowledged this testimony, and appropriately determined that the evidence in the record did not support these allegations or indicate greater than mild limitations in mental functioning. Tr. 20.

Based on the evidence of record, the ALJ properly determined that Plaintiff had no more than a mild limitation in any of the four broad functional areas and reasonably determined that Plaintiff's mental impairments were non-severe. Tr. 18; SSR 96-3p, 1996 WL 374181; *Bowen v. Yuckert*, 482 U.S. 137, 154 (1987) (impairment is non-severe if it has no more than a minimal effect on the claimant's physical or mental ability to perform work); *Rousey v. Comm'r of Soc.*

*Sec.*, 285 F. Supp. 3d 723, 738 (S.D.N.Y. 2018) (ALJ properly determined that plaintiff had mild limitations in four broad functional areas and no severe mental impairments where assessment was supported by consultative examiner's opinion and other evidence of record). Plaintiff has not demonstrated that "a reasonable factfinder would *have to conclude*" that the ALJ's step two determination was incorrect. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d at 448 (emphasis in original) (citations omitted). As demonstrated here, substantial evidence supported the ALJ's determination that Plaintiff's alleged mental impairments were not severe.

In her second point of error, Plaintiff argues that the ALJ failed to adequately consider her mental impairments throughout the sequential evaluation process, and therefore assessed a deficient RFC and made an unsupported step five finding. *See* ECF No. 11-1 at 27. Plaintiff's arguments are without merit.

Even if the ALJ had erred at step two by finding Plaintiff's mental impairments not severe, where an ALJ proceeds past step two and considers the effects of all of the claimant's impairments through the remainder of the sequential evaluation process, an error at step two is harmless. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (holding that the ALJ's failure to find two impairments "severe" at step two was harmless, because the ALJ considered them later in the evaluation process); *see also Howard*, 203 F. Supp. 3d at 297 (citing cases). While this harmless error doctrine does not always apply in relation to mental impairments, *Howard*, 203 F. Supp. 3d at 297-98, uncertainty as to whether an ALJ applied the special technique during the severity stage will not, "standing alone, warrant remand or reversal if the ALJ's other findings show that the proper legal standards were applied and that all of [the claimant's] impairments were properly considered at all of the subsequent steps." *Booker v. Astrue*, No. 1:07-CV-646 GLS, 2011 WL 3735808, at *4 (N.D.N.Y. Aug. 24, 2011).

Here, the ALJ plainly considered the alleged effects of Plaintiff's mental impairments throughout the sequential evaluation process, as described above. In assessing the RFC, the ALJ considered Plaintiff's subjective complaints of panic attacks and anxiety, the results of the consultative examination, and the opinions of Drs. Zali and Bruno regarding Plaintiff's mental functioning, and his determination that Plaintiff had no more than mild limitations in mental functioning was supported by substantial evidence, as discussed above. Tr. 20, 21-22. Furthermore, when the ALJ posed the hypothetical question to the VE, the ALJ included a limitation to "simple tasks," even though that limitation was not in the RFC assessment. Tr. 104-05. In response, the VE identified jobs which included the limitation to simple tasks, and relying on that testimony, the ALJ and identified those same jobs at step five of the sequential process. Tr. 23, 104-05.

Because the ALJ considered Plaintiff's mental limitations throughout the sequential evaluation, and the medical evidence demonstrated that Plaintiff was able to engage in unskilled work, any error in failing to find a severe mental impairment at step two was harmless. *See Berst v. Comm'r of Soc. Sec.*, No. 1:17-CV-00387 EAW, 2018 WL 3637463, at *6 (W.D.N.Y. July 31, 2018) (finding failure to include mental limitations in RFC was harmless where evidence showed plaintiff could perform basic work activities and hypothetical to vocational expert included limitation to unskilled work even though that limitation was not in RFC) (citing *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (failure to incorporate non-exertional limitations in a hypothetical is harmless error if medical evidence demonstrates that claimant can engage in simple, routine tasks or unskilled work despite mental limitations and the challenged hypothetical is limited to unskilled work or the hypothetical otherwise implicitly accounted for mental limitations).

While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a

reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted). Plaintiff here failed to meet his burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record. *See Brault v. Soc. Sec. Admin.*, *Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).

For all these reasons, the Court finds that the ALJ appropriately considered the evidence of record, including the clinical findings and the medical opinions, and the ALJ's determination was supported by substantial evidence. Accordingly, the Court finds no error.

<u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 11) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 15) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE